IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| VIRGIL A. TREECE, | ) Civil Action No. 3:08-3909-DCN-JRM |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| SOUTH CAROLINA DEPARTMENT OF | ) |
| MENTAL HEALTH SCDMH; | ) |
| SEXUALLY VIOLENT PREDATOR | ) |
| TREATMENT PROGRAM; | ) **ORDER** |
| JOHN MCGILL, DIRECTOR; | ) **AND** |
| HOLLY SCATURA; CHAD LOMINICK; | ) **REPORT AND RECOMMENDATION** |
| CYNTHIA HELFF; SHELLY WINSTON; | ) |
| LAJOINER AMAKER; SHEILA LINDSAY; | ) |
| PAULA PRINCE; GAYLEN SANDERS; | ) |
| DR. PEGGY WADMAN; | ) |
| SGT. JANICE TILLMAN; | ) |
| WILLY GUNTER, SAFETY OFFICER; | ) |
| STAN COIT, SAFETY OFFICER; | ) |
| BRYANT MORTON; | ) |
| ROBERT STEVENS; AND | ) |
| JOHN DOE AND OTHER UNKNOWN SCDMH | ) |
| EMPLOYEES EACH IN THEIR INDIVIDUAL | ) |
| CAPACITY AND UNDER THE COLOR OF | ) |
| LAW AND IN THEIR OFFICIAL CAPACITY AS | ) |
| EMPLOYEES OF THE DEPARTMENT OF | ) |
| MENTAL HEALTH SERVICES, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff filed this action pro se pursuant to 42 U.S.C. § 1983 on December 3, 2008.[1]  He is

involuntarily committed to the Sexually Violent Predator Treatment Program ("SVPTP") at the South

Carolina Department of Mental Health ("SCDMH") as a Sexually Violent Predator ("SVP") pursuant

to the South Carolina SVP Act ("SVPA" or "SVP Act"), S.C. Code Ann. § 44-48-10 et seq.  In a

---

[1]This action was originally filed by a number of plaintiffs who challenged various conditions of confinement.  On December 18, 2008, the Honorable David C. Norton, Chief United States District Judge, District of South Carolina, denied class certification and directed that individual civil action numbers be assigned to each plaintiff who signed the complaint.  See Doc. 7.



letter dated February 20, 2008 (Doc. 20), Plaintiff requested that certain Defendants be dropped from this action. As the action had not yet been served, Plaintiff's pleading was deemed to be an amended complaint and the Defendants in question (Lt Charles-Lewis, Corp. Weitz, and Dr. McKee) were dismissed from this action on March 25, 2009. See Doc. 27.[2] The remaining Defendants are the SCDMH, the SVPTP, John McGill, Holly Scaturo ("Scaturo"),[3] Chad Lominick, Cynthia Helff ("Helff"), Shelly Winston, Lajoiner Amaker ("Amaker"), Sheila Lindsay ("Lindsay"), Paula Prince, Gaylen Sanders ("Sanders"), Dr. Peggy Wadman, Sgt. Janice Tillman, Willy Gunter, Stan Coit, Bryant Morton, Robert Stevenson ("Stevenson"),[4] and the John Doe Defendants.

Plaintiff appears to allege, pursuant to 42 U.S.C. § 1983, that his constitutional rights were violated. He asserts numerous claims including complaints about his living conditions, medical care, and access to the courts. He also alleges claims under the Americans with Disabilities Act ("ADA"); what he refers to as the "Patient's Bill of Rights," which appears to the be the South Carolina Rights of Mental Health Patients ("SCRMHP"), S.C. Code Ann. §§ 44-22-10 through 44-22-220; the SCDMH Agency Rules and Procedures; and the Civil Rights of Institutionalized Persons Act. ("CRIPA"), 42 U.S.C. §§ 1997-1997j. Plaintiff requests declaratory, injunctive, monetary damages, and attorneys' fees. Amended Complaint at 60-61.

---

[2] The amended complaint is identical to the original complaint with the exception of the dismissal of the three parties.

[3] The correct spelling of this Defendant's last name is "Scaturo," not "Scatura." See Scaturo Aff. (Doc. 83-1).

[4] The individual Defendants appear to all be employees of either the SCDMH or the South Carolina Department of Corrections. Plaintiff appears to have misidentified Defendant Stevenson, the Warden of Broad River Correctional Institution, as "Stevens." See Amended Complaint at 5 and Stevenson Aff.



On May 26, 2009, Defendants SVPTP and SCDMH filed a motion to dismiss and the John Doe Defendants filed a separate motion to dismiss. Because Plaintiff is proceeding pro se, he was advised on May 27, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motions to dismiss could result in the dismissal of his complaint. Plaintiff filed responses on June 5, 2009, and Defendants SVPTP and SCDMH filed a reply on June 15, 2009. Plaintiff filed a motion for declaratory judgment on August 24, 2009. Defendants filed a motion for summary judgment on October 13, 2009. Another Roseboro order was issued on October 14, 2009. Plaintiff filed a response on November 24, 2009, and Defendants filed a reply on December 2, 2009. Plaintiff filed a motion to dismiss on October 19, 2009, and he filed a motion to stay on November 25, 2009.

## MOTION TO ADD SUPPLEMENTARY EVIDENCE

On January 7, 2010, Plaintiff filed a motion "FOR ENTRY OF SUPPLEMENTARY EVIDENCE IN OPPOSITION TO DEFENDANTS ['] MOTION FOR SUMMARY JUDGMENT and Notice of Motion." He argues that his motion should be granted because the proposed new evidence does not constitute new claims and the exhibit is "material proof of the past and on going inhuman conditions." Defendants contend that Plaintiff's motion should be denied because Plaintiff is attempting to assert new claims not contained in the complaint and the evidence is not relevant to the claims before the court.

Defendants filed their motion for summary judgment on October 13, 2009. The deadline for Plaintiff to file memoranda and materials in opposition to Defendants' motion was November 17, 2009. Plaintiff did not request any extension of time to submit further materials. The document he wishes to include concerns claims not included in his extensive amended complaint. Additionally,

3



the alleged incident occurred nearly a year after the filing of his original complaint. Plaintiff's

motion to add additional evidence (Doc. 93) is, therefore, denied.[5]

### PLAINTIFF'S MOTION TO DISMISS

On October 19, 2009, Plaintiff filed a motion to dismiss pursuant to Fed. R. Civ. P. 41. He

asserts that his motion should be granted because "the case is overly burdensome for all concerned

as is evident by the defendants requesting continuances," he has no resources to prosecute this case

at the present time, "the sheer volume of the issues alleged are burdensome, and needs to be culled

in order to properly address pertinent issues," and "Plaintiff is in way over his head." Plaintiff also

appears to think that he represents a group of plaintiffs and that this action should be dismissed so

that plaintiffs can "seek redress as each see[s] fit." Defendants contend that any dismissal should be

with prejudice because Plaintiff did not move to dismiss this case earlier, he did not remove any of

the excessive and unnecessary claims when he amended his Complaint, he waited to move to dismiss

until almost a year after the Complaint was initially filed and after a motion for summary judgment

was filed by Defendants, and he filed his motion after the deadline for filing dispositive motions.

Defendants appear to argue that they would be prejudiced if this case is dismissed without prejudice

as they have already expended a large amount of time and money defending this action.

Under Fed. R. Civ. P. 41(a)(2), a district court may dismiss an action "at the plaintiff's request

only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Fourth

Circuit has explained that "[t]he decision to grant a voluntary dismissal under Rule 41(a)(2) is a

---

[5]Even if this additional information is admitted into the record, it would not change the undersigned's report and recommendation. Contrary to Plaintiff's argument, the proposed exhibit does not show that Defendants have provided him with "zero" heat. Instead, this grievance and response indicates that the temperature in his unit is set at 68 degrees, there is a problem in the common area ventilation system (not with the entire building system), and Defendants are taking steps to repair the damaged part of the system.



matter for the discretion of the district court, and its order will ordinarily not be reversed except for an abuse of discretion." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Id. "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986).

It is well established that prejudice to the defendant does not result from the prospect of a second lawsuit. See Vosburgh v. Indemnity Ins. Co. of North America, 217 F.R.D. 384, 386 (S.D.W.Va. Sep. 12, 2003). The Fourth Circuit, however, has found on multiple occasions that a district court does not abuse its discretion in denying a motion for voluntary dismissal if the case has advanced to the summary judgment stage and the parties have incurred substantial costs in discovery. See, e.g., Miller v. Terramite Corp., 114 Fed. Appx. 536, 540 (4th Cir. 2004)(affirming district court's decision that plaintiff's motion for voluntary dismissal was "untimely and would waste judicial resources" because the motion was filed well after discovery had closed and a dispositive order was imminent); Francis v. Ingles, 1 Fed. Appx. 152, 154 (4th Cir. 2001)(affirming district court's denial of motion to dismiss without prejudice because the "plaintiff's motion came after a lengthy discovery period and merely one week before the scheduled trial date" and "the motivation for the motion appeared to be to circumvent" a discovery ruling, which counsel could have avoided "by deposing the witness within the discovery period"); Skinner v. First Am. Bank of Va., 64 F.3d 659, 1995 WL 507264, at *2-3 (4th Cir. 1995) (stating that "[t]he expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal" and noting that granting a motion to dismiss is not required to allow a party to "avoid an adverse ruling in federal court"); Sullivan v. Westinghouse Elec. Corp., 848 F.2d 186, 1988 WL 54059, at *2 (4th Cir.1988) ("Given the advanced stage of the proceedings, the district court's denial of [the



plaintiff's] motion was not an abuse of discretion."). Four factors that the court can consider in deciding a motion to voluntarily dismiss an action are: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." <u>Gross v. Spies</u>, 133 F.3d 914, 1998 WL 8006, at *5 (4th Cir. Jan.13, 1998).

Defendants would be substantially prejudiced if Plaintiff's motion to dismiss without prejudice is granted. Plaintiff delayed filing his motion to dismiss. He did not file his motion until well after the time period for discovery ended and the deadline for filing dispositive motions passed. Defendants provide that they have already expended a large amount of money and time in defending this case. Plaintiff states that he need to dismiss this action to cull some of the issues, but has not proposed to do so. He also appears to be under the impression that he is litigating this action on behalf of other SVPTP residents, which he is not. As Judge Norton noted in his December 18, 2008 order, a <u>pro se</u> litigant cannot litigate the interests of another person. <u>See</u> Doc. 7. It is, therefore, recommended that Plaintiff's motion to dismiss without prejudice (Doc. 85) be denied.

## PLAINTIFF'S MOTION TO STAY

On November 25, 2009, Plaintiff filed a motion to hold this case in abeyance. He appears to ask that this case be stayed because staff members of the SVPTP confiscated a floppy disk belonging to him after he admitted to being in possession of contraband that had been downloaded to SVPTP computers. Plaintiff alleges that the disk contains his legal references and the only copies of his prior pleadings in this action. He claims that it will harm his ability to prosecute this case if he does not have these materials. Defendants contend that a stay is not necessary at this time and issuing such

a stay would be highly prejudicial to Defendants and is not in the interest of judicial economy. They also assert that denying the motion to stay would not cause any harm or detriment to Plaintiff.

It is recommended that Plaintiff's motion to stay (Doc. 89) be denied. Plaintiff's request that the materials be returned to him is moot as the disks in question have now been returned to him.[6] Further, Plaintiff fails to show any need for a stay as there were no pending deadlines for Plaintiff at the time his motion was filed.

## PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT

Plaintiff requests, pursuant to Fed. R. Civ. P. 57, that the court determine whether he is protected by S.C. Code S.C. Code Ann. § 44-48-10 or 44-81-10, or by the "Federal Congressional Standards Sec. 10841." He also asks whether Defendants can prevent him from keeping "certain personal property." Defendants contend that Plaintiff cannot file a motion for declaratory judgment in which he asks for a declaratory judgment, his motion is essentially repetitive of his previously filed pleadings, and he sets forth nothing to justify the granting of the relief sought.

It is recommended that Plaintiff's motion for declaratory judgment (Doc. 78) be denied. " '[A] party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment.' " Kam-Ko Bio-Pharm Trading Co., Ltd.- Australasia v. Mayne Pharma (USA), Inc., 560 F.3d 935, 943 (9th Cir. 2009)(quoting International Bhd. of Teamsters v. Eastern

---

[6]Lieutenant Rosalind Dendy states that on November 13, 2009, Plaintiff's room was searched for contraband after Plaintiff admitted to being in possession of contraband, consisting of a Compact Disc ("CD") from a source outside of the SVPTP, and he admitted to using that contraband within the unit housing the SVPTP. She states that residents of the SVPTP are not allowed to have CDs of any kind because they can be used as a weapon if broken and materials coming from outside sources are a problem because they cannot be regulated by the SVPTP. During the search, four floppy disks were found and taken into custody to ensure that no contraband had been duplicated from the contraband CD onto the floppy discs. The Information Technology department reviewed the disks and the four floppy disks have been returned to Plaintiff as no contraband was found on them. Dendy Aff. (Doc. 92-1).



Conference of Teamsters, 160 F.R.D. 452, 456 (S.D.N.Y.1995)); see also Thomas v. Blue Cross and Blue Shield Ass'n,__ F.3d __, 2010 WL 183477 (11th Cir. 2010). The Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." Fed.R.Civ.P. 57. As a result, "the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions," including the requirement that "the action is commenced by filing a complaint." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2768 (3d ed. 1998). Additionally, Plaintiff may be bringing his motion to obtain a advisory opinion, which this court is not empowered to issue. See FCC v. Pacifica Found., 438 U.S. 726, 735 (1978) ("[F]ederal courts have never been empowered to issue advisory opinions."); Herb v. Pitcairn, 324 U.S. 117, 126 (1945) ("We are not permitted to render an advisory opinion[.]")

## MOTION TO DISMISS OF DEFENDANTS SVPTP AND SCDMH

Defendants SVPTP and SCDMH contend that their motion to dismiss should be granted because they are entitled to Eleventh Amendment immunity. Plaintiff argues that these Defendants are not entitled to immunity because immunity has been waived under the South Carolina Tort Claims Act ("SCTCA").

It is recommended that the motion to dismiss of Defendants SVPTP and SCDMH be granted as to Plaintiff's claims for monetary damages. The Supreme Court has held that state agencies are entitled to Eleventh Amendment immunity from monetary damages. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71. The State of South Carolina, in the SCTCA, specifically denied consent to suit in federal district court. See S.C. Code Ann. § 15-78-20(e)(statute expressly provides that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only



in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another State).

**MOTION TO DISMISS OF JOHN DOE DEFENDANTS**

On May 26, 2009, the John Doe[7] Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 4(e), 12(b)(2), 12(b)(4), and 12(b)(5). They contend that their motion should be granted because there is no proof of service on them, their identity is unknown, and Plaintiff fails to set forth facts sufficient to constitute a cause of action against them. Plaintiff asserts that Defendants' motion should be denied because he has not had time to conduct discovery to identify these Defendants.

When a defendant challenges the manner or sufficiency of service of process, "[t]he plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4." Elkins v. Broome, 213 F.R.D. 273, 275 (M.D.N.C. 2003)(citing Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F.Supp. 519, 526 (M.D.N.C. 1996)). Rule 4(m) provides, in part:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

Fed. R. Civ. P. 4(m). Further, the Local Rules provide:

> In the event a pleading asserting a claim is not served on each party against whom a claim is asserted within one hundred twenty (120) days after filing of the pleading, the party asserting a claim shall advise in writing the Court and all parties previously served at the expiration of said one hundred twenty-day (120) period of the identity of the party not served and why service has not been effected.

---

[7]Although designation of a 'John Doe' defendant is not favored in the federal courts, it is permissible when the identity of the alleged defendant is not known at the time the complaint is filed and plaintiff could identify defendant through discovery. See Schiff v. Kennedy, 691 F.2d 196 (4th Cir. 1982); Gillespie v. Civiletti, 629 F.2d 637 (9th Cir. 1980); Maclin v. Paulson, 627 F.2d 83 (7th Cir. 1980).



Local Civil Rule 4.01 DSC.

Here, the complaint was filed on December 3, 2008. More than 120 days have passed and Plaintiff has not shown that he has served the John Doe Defendants or requested an extension of time to do so. At this time, Plaintiff has still not identified the John Doe Defendants. It is recommended that the motion to dismiss of the John Doe Defendants (Doc. 52) be granted.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants contend that their motion for summary judgment should be granted because: (1) they are entitled to Eleventh Amendment immunity; (2) they are entitled to qualified immunity; (3) they cannot be held liable solely on the basis of respondeat superior;[8] (4) Plaintiff has asserted mostly conclusory allegations and fails to state a claim; (5) Plaintiff fails to show that the SVPA is unconstitutional; (6) Plaintiff fails to show that his due process rights under the Fourteenth Amendment were violated as to his personal property rights, the medical care and treatment he receives, the food he receives, double-bunking, or other claims; (7) Plaintiff fails to show that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated; (8) Plaintiff fails to show that he has been denied access to the courts; (9) Plaintiff fails to show that his First Amendment rights as to the exercise of his religion have been violated; (10) Plaintiff fails to show

---

[8]To the extent that Plaintiff is attempting to hold Defendants liable under § 1983 solely on the basis of their supervisory capacities of their positions within either the SCDMH or the SCDC, those Defendants are entitled to summary judgment. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).



that his First Amendment right to free speech has been violated; (11) Plaintiff lacks standing to assert claims on behalf of other residents or individuals; (12) Plaintiff fails to show that his rights under the ADA have been violated; (13) Plaintiff fails to show that his rights under the SCRMHP have been violated; (14) Plaintiff fails to state a claim under CRIPA; (15) Plaintiff fails to state a claim for a loss of property; (16) Plaintiff fails to set forth any evidence which would justify the granting of declaratory relief; and (17) Plaintiff fails to show that he is entitled to injunctive relief.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972) and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The non-moving party is entitled to have the court construe all disputed facts and all reasonable inferences drawn therefrom in the most favorable light. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v Catrett, 477 U.S. 317, 322 (1986). A party wishing to oppose summary judgment must present evidence tending to raise a material and genuine factual dispute. See Morrissey v. William Morrow & Co., 739 F.2d 962 (4th

11



Cir. 1984), <u>cert.</u> <u>denied</u> 469 U.S. 1216 (1985); <u>Foy v. Norfolk and W. Ry. Co.</u>, 377 F.2d 243 (4th

Cir.), <u>cert.</u> <u>denied</u>, 389 U.S. 848 (1967); <u>Bradford v. School Dist.</u>, 364 F.2d 185 (4th Cir. 1966); and

<u>Sturdivant v. Medical Eng'g Corp.</u>, 121 F.R.D. 51 (D.Md. 1988).

### 1. **<u>Standing</u>**

Plaintiff appears to still be attempting to assert claims on behalf of other SVPTP

detainees. "[A] litigant 'has standing to seek redress for injuries done to him, but may not seek

redress for injuries done to others.'" <u>Laird v. Tatum</u>, 408 U.S. 1, 14 (1972)(citations omitted). Thus,

Plaintiff lacks standing to assert claims on behalf of these other detainees.

### 2. **<u>Constitutionality of the SVPA</u>**

Plaintiff appears to challenge the constitutionality of the SVPA. He also claims that

the SVPTP should not be allowed to share space with the South Carolina Department of Corrections

("SCDC"). Defendants contend that the South Carolina Supreme Court repeatedly has found that

the SVPA itself, as well as the commitment pursuant to the SVPA, is valid and constitutional. They

also argue that the South Carolina Supreme Court has specifically held that the interagency

agreement between the SCDMH and the SCDC does not violate the constitution.

Plaintiff fails to show that the SVPA is unconstitutional. The SVPA allows the commitment

of persons determined to be SVPs beyond the completion of their criminal sentence. The SVPA was

passed in response to concerns that "a mentally abnormal and extremely dangerous group of sexually

violent predators exists who require involuntary civil commitment in a secure facility for long-term

control, care, and treatment." S.C.Code Ann. § 44-48-20. The Supreme Court of South Carolina has

found that the SVPA itself, as well as commitment to the SVPTP pursuant to the SVPA, is valid and

constitutional. <u>See</u> <u>In re Matthews</u>, 550 S.E.2d 311 (S.C. 2001); <u>State v. Gaster</u>, 564 S.E.2d 87 (S.C.



2002). The Supreme Court of South Carolina, in the case of <u>In Re Treatment and Care of Luckabaugh</u>, 568 S.E.2d 338 (S.C. 2002), concluded that a statute creating two types of civil commitment is not <u>per se</u> punitive and that a plaintiff must provide evidence that the act is so punitive in effect as to negate the Legislature's intent to create a civil statute. <u>Luckabaugh</u>, 568 S.E.2d at 346.[9]

The South Carolina General Assembly authorized the SCDMH and the SCDC to enter into an interagency agreement whereby the South Carolina SVPs may be confined in a secure facility within the SCDC. Specifically, the housing of SVPs in South Carolina is governed by S.C.Code Ann. § 44-48-100(A), which provides in pertinent part:

> The Department of Mental Health may enter into an interagency agreement with the Department of Corrections for the control, care, and treatment of these persons. A person who is in the confinement of the Department of Corrections pursuant to an interagency agreement authorized by this chapter must be kept in a secure facility and must, if practical and to the degree possible, be housed and managed separately from offenders in the custody of the Department of Corrections.

### 3. Fourteenth Amendment Claims

Plaintiff asserts numerous claims concerning his living conditions and medical care. Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. <u>Youngberg v. Romeo</u>, 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement under the SVP Act bear some reasonable relation to the purpose for which persons are committed. <u>See</u> <u>Seling v. Young</u>, 531 U.S. 250, 265 (2001); <u>Youngberg v. Romeo</u>, <u>supra</u>.

---

[9]Plaintiff cannot show that the SVP Act constitutes double jeopardy or violates the <u>Ex Post Facto Clause</u>. <u>See</u> <u>In Re Allen</u>, 568 S.E.2d 354 (S.C. 2002); <u>see also</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346, 371 (1997).



In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be given to the decisions of professionals. <u>Youngberg</u>, 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." <u>Id.</u> at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. <u>Id.</u> at 322.

    a.    **<u>Medical Care/Treatment Plan</u>**

        Plaintiff alleges that his constitutional rights have been violated because he was denied medical care. He also makes claims concerning his mental health treatment plan, including that he does not receive enough counseling, is not given certain tests, and does not have specific treatment plans. Defendants contend that Plaintiff fails to show that they did not meet the "professional judgment" standard with respect to any of his allegations concerning his medical treatment or treatment plan.

    The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. <u>DeShaney v. Winnebago</u>, 489 U.S. 189, 200 (1989); <u>Youngberg</u>, 457 U.S. at 324. To state a claim pursuant to the Fourteenth Amendment requires a plaintiff to provide proof of more than mere negligence in diagnosing and treating medical complaints. <u>Patten v. Nichols</u>, 274 F.3d 829 (4th Cir. 2001). While courts have not adopted a consistent standard, there is agreement that the professional judgment standard requires more culpability than mere negligence. <u>Compare</u> <u>Yvonne L. v. New Mexico Dep't of Human Servs.</u>, 959 F.2d 883, 894 (10th Cir. 1992)(doubting whether "there is much

14



difference" between the deliberate indifference standard and the <u>Youngberg</u> standard), with <u>Doe v. New York City Dep't of Soc. Servs.</u>, 709 F.2d. 782, 790 (2d Cir. 1983)(stating that in <u>Youngberg</u>, "the Court adopted what is essentially a gross negligence standard"); <u>see</u> <u>also</u> <u>Shaw v. Strackhouse</u>, 920 F.2d 1135, 1146 (3d Cir. 1990)("Professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct.").

Plaintiff has not shown that Defendants violated the professional judgment standard as to his medical treatment. Plaintiff alleges that he requested emergency dental services on July 28, 2008 because he had a very loose tooth causing him severe pain. He claims he had to wait nineteen days in intense pain before being treated for an abscessed tooth, his gums swelled greatly, and the tooth broke and bled. Plaintiff's medical records, however reveal that Plaintiff did not complain of a loose tooth until July 30, 2008, and a dental appointment was ordered that date. Although he was not treated in the dental clinic until August 12, 2008 (at which time his loose tooth was extracted), the records show no complications. Further, the medical records reveal that Plaintiff was given pain medications to relieve any pain from the time of his complaint until his appointment. <u>See</u> Virginia Suber Aff., Ex. 2 (Plaintiff's Medical Records).

Plaintiff alleges that Defendants have put him at a significant risk of harm or death because nursing services will not allow him to keep Nitroglycerin at his bed side to prevent a heart attack. Defendant Sanders states that residents of the SVPTP are not permitted to have medications at their bedside because of concerns that a resident may overdose on the medication or give it to another resident. She states there is particular concern about keeping Nitroglycerin because it is not taken regularly and an overdose can cause serious side effects. Sanders states that there is a nurse on staff at the SVPTP unit at all times and either a physician or a licensed prescribing practitioner is on call to handle any medical problems that arise. Sanders Aff.



Plaintiff also alleges claims concerning the mental health and rehabilitation program he is receiving at the SVPTP. He fails, however, to show a violation of the <u>Youngberg</u> "professional judgment" standard. Defendant Helff is the Clinical Coordinator for the SVPTP program. She states that the SVPTP uses the Rockwood Model in providing treatment to SVPTP residents, residents take part primarily in group counseling; residents participate in skills training sessions designed for rehabilitation; and other therapy is provided including sex offender therapy, activity therapy, wellness training, skills-based training, and (if applicable) alcohol and drugs abuse therapy. Helff states that once a week Plaintiff goes to a day program at an offsite facility where he attends Rockwood Model process group for two and one-half hours, a sexuality/intimacy education group for one and one-half hours, and activity therapy for one hour. She states that Plaintiff has multiple opportunities to engage in activity therapy at his unit, and he has an individual case manager who can meet with him privately if needed. Helff provides that all individuals responsible for Plaintiff's Rockwood sex-offender specific treatment within the SVPTP are either Licensed Master Social Workers or Licensed Professional Counselors. She states that the SVPTP also has a board-certified forensic psychiatrist who provides care for the residents' psychiatric issues including prescribing medications, and the unit has a nurse practitioner. Helff Aff.

### b. <u>Food</u>

Plaintiff alleges that he is being subjected to the same food designed to "punish" inmates, including cabbage, rice, pasta noodles, and processed ground turkey parts. He claims that food it often burned or undercooked. Plaintiff also asserts that his family members should be allowed to bring him food. Defendants contend that Plaintiff fails to establish that the food provided is so inadequate as to violate Plaintiff's constitutional rights.



Plaintiff fails to show that the food he is being provided is punishment. Defendant Stevenson states that there is a nutritionist on staff who approves of the meals that are served to the SVPTP residents. He states that he has no knowledge of any complaints with regard to any contamination of food served to the residents of the SVPTP. Additionally, Stevenson states that in addition to food served in the cafeteria, residents of the SVPTP have the option to buy food offered in the canteen. Food from outside sources, such as a resident's family member, is not permitted within the institution out of concern for maintaining the safety of the institution. Stevenson Aff., Paras. 10-11.

      c.    **<u>Double-Bunking</u>**

Plaintiff appears to allege that Defendants have punished him by double-bunking him. Defendants contend that Plaintiff lacks standing to bring a claim concerning double-bunking because he is not currently double-bunked and does not meet the SVPTP program standards to be double-bunked.

Plaintiff fails to show that his constitutional rights were violated because of any double-bunking. Defendant Sanders states that due to space limitations and the increase in the number of referrals of residents into the SVPTP, it has become necessary to double-bunk certain residents. She states that under SVPTP policies and procedures, decisions regarding double-bunking are made with the best medical, treatment, and safety interests of the individual residents in mind. Sanders provides that Plaintiff is not currently double-bunked, does not meet the standards for double-bunking at this time, and any resident who is double-bunked is given the opportunity to appeal his concerns through the grievance process. Sanders Aff. Paras. 4-8.

### d. **Property Claims**

Plaintiff claims that Defendants have denied his right to own and keep personal property. Specifically, he complains that he cannot have a battery operated television and lamp in his room, he cannot wear clothing of his choice, he is limited in the magazines and newspapers he can have, and he is limited in what photographs he may have. Defendants contend that Plaintiff fails to show that he has a liberty interest in possessing such personal property and that the restrictions placed on him have been implemented out of concern for the safety of the residents and employees, security of the unit, and concern with regard to the size limitations of the unit and the resident to staff ratio.

The restrictions on Plaintiff's ability to possess property bear a reasonable relation to Defendants' interest in maintaining security and safety and do not appear to be punitive. Defendant Amaker states that the Personal Belonging Policy establishes the amount of personal belongings each resident is allowed to maintain. He says that the policy was implemented as a result of limited housing space on the unit and the limitations are necessary out of security and safety concerns on the unit. Amaker provides that policies pertaining to residents have either been given to residents or are kept in a binder in the milieu area of the unit. Amaker Aff., Paras. 4-6. Stevenson states that due to safety concerns residents must purchase items through the canteen. Stevenson Aff., Para. 8. [10]

---

[10]To the extent that Plaintiff is attempting to allege a claim concerning lost property, negligent deprivations of personal property do not support an action for damages under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986). Furthermore, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney, 489 U.S. at 200-203.

The United States Court of Appeals for the Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides a plaintiff with a viable remedy for the loss of personal property--even if the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of a state. Yates v. Jamison, 782 F.2d 1182,

(continued...)



### e.    **Other**

Plaintiff makes a wide variety of allegations concerning restrictions placed on him as a result of his being housed within the SVPTP. He claims that he has been subject to searches of his person, his room, and his mail. He appears to allege that his visitation has been curtailed and that phone calls are recorded and monitored. Plaintiff also makes claims concerning the condition of the SVPTP facilities. Defendants contend that the restrictions placed on Plaintiff are in place out of concerns for security and safety, the building is maintained in a way that does not pose any significant threat to health and safety, Plaintiff's allegations are not supported by any evidence, and there is no indication that the alleged conditions of confinement caused Plaintiff any actual injury.

---

[10](...continued)
1183-84 (4th Cir. 1986). <u>Yates</u> has been partially superannuated for cases where plaintiffs allege deprivations of intangible interests, such as a driver's license or "liberty." <u>See</u> <u>Plumer v. Maryland</u>, 915 F.2d 927, 929-32 & nn. 2-5 (4th Cir. 1990) and <u>Zinermon v. Burch</u>, 494 U.S. 113 (1990). Nevertheless, the holding in <u>Yates</u> is still binding on lower federal courts in the Fourth Judicial Circuit in cases involving deprivations of personal property.

Under South Carolina law, Plaintiff's claims may be cognizable under the South Carolina Tort Claims Act, § 15-78-10 <u>et seq.</u>, S. C. Code Ann. Section 15-78-30 and its subparts encompass a "loss" of property from an occurrence of negligence proximately caused by a person employed by the State of South Carolina, a state agency, or political subdivision while acting within the scope of his or her employment. Under the South Carolina Tort Claims Act, a claimant is required to file an administrative claim with the agency, department, or the State Budget and Control Board before seeking judicial relief in a Court of Common Pleas. <u>See</u> S.C. Code Ann. § 15-78-80. South Carolina case law indicates that claimants under the South Carolina Tort Claims Act must strictly comply with its requirements and must timely pursue their claims before the applicable limitations period expires. <u>See</u>, <u>e.g.</u>, <u>Murphy v. Richland Memorial Hosp.</u>, 455 S.E.2d 688 (S.C. 1995); and <u>Pollard v. County of Florence</u>, 444 S.E.2d 534 (S.C.Ct. App. 1994).

Cases from other circuits point out that the availability of a state cause of action for an alleged loss of property provides adequate procedural due process. In other words, where state law provides such a remedy, no federally guaranteed constitutional right is implicated. <u>See</u> <u>King v. Massarweh</u>, 782 F.2d 825, 826 (9th Cir. 1986); <u>Slaughter v. Anderson</u>, 673 F. Supp. 929, 930 (N.D.Ill. 1987). Plaintiff has an available judicial remedy for the missing property: the South Carolina Tort Claims Act, <u>supra</u>.



The restrictions on Plaintiff's ability to possess property bear a reasonable relation to Defendants' interest in maintaining security and safety and do not appear to be punitive. Stevenson states that restrictions on visitation are in place out of concerns for institutional security and the safety of visitors. He states that maintenance at the institution is performed as needed and although the building is old, the unit is maintained in a manner so as not to pose any threat to the health and safety of residents and employees. Stevenson provides that the institution takes all reasonable measures to afford the SVPTP residents all reasonable freedoms, but because the SVPTP is housed within the perimeter of the Broad River Correctional Institution, a maximum security facility, the concerns of security require some limited restrictions on SVPTP residents. Stevenson Aff., Paras. 7, 9, and 12.

Defendant Lindsay provides that residents are allowed to make personal phone calls to people on approved call lists between 7:00 p.m. and 9:00 p.m. Sunday through Friday, from 11:30 a.m. to 1:00 p.m. on Saturday, and others times with approval. She dials the number to ensure that the phone call is to an authorized number. After the number is dialed, she leaves the room and calls are not monitored. Lindsay Aff., Paras. 7-9. Defendant Holly Scaturo is the Director of Forensic Evaluation and Treatment Services within the Division of Inmate Services at the SCDMH. She states that because SVPTP residents are housed in a maximum security setting and due to the fact that they are deemed to be dangerous and sexually violent, they are subject to monitored telephone calls and supervised visitation. Scaturo Aff., Paras. 1 and 6.

### 4. Equal Protection

Plaintiff alleges that his rights under the Equal Protection Clause of the Fourteenth Amendment have been violated. An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const.



amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a member of a suspect class he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. See Turner v. Safley, 482 U.S. 78, 89 (1987). Plaintiff fails to establish an equal protection claim. Plaintiff has not alleged that he is a member of a suspect class. He has not shown that he was treated differently than any similarly-situated civilly committed residents.

     **5.**    **Access to the Courts**

       Plaintiff appears to allege that he is denied access to the courts because he does not have adequate library and other legal resources and his "legal" calls are monitored. Defendants deny that Plaintiff has a right of access to the courts guaranteed by the Constitution of the United States, but assuming that he does, he fails to show he has been denied access to the courts.

       In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must

21



identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir.1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir.1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir.1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Although Plaintiff is civilly committed and not a prisoner, an individual whose liberty is constrained against his will has a constitutional right of access to the courts to challenge the facts or conditions of his confinement. His circumstances are similar enough to that of a criminal defendant or pretrial detainee to warrant analysis under Bounds and Casey, as discussed above. See Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir.1995)(The "right of access [to the courts] is guaranteed to people institutionalized in a state mental hospital regardless of whether they are civilly committed after criminal proceedings or civilly committed on grounds of dangerousness").

Plaintiff fails to show that he has been denied access to the courts. Review of the pleadings in this action reveals that Plaintiff has been able to research, copy, serve, and file a variety of lengthy pleadings. Defendant Lindsay provides that when a resident of the SVPTP desires to make a telephone call of a legal nature, he completes a request form. She states that residents are permitted to make calls of a legal nature during business hours and at other times with approval, there are no time limitations as long as the calls do not interfere with or cause disruption of the regular operation of the SVPTP, calls are not recorded, and the door to the telephone room is closed during calls of a legal nature. She has provided a copy of the SVPTP telephone policy. Lindsay Aff., Paras. 6-8. Further, Plaintiff fails to show that his access to the courts has been violated as he has not shown any



actual injury resulting from Defendants' alleged actions. See <u>Bounds v. Smith</u> and <u>Lewis v. Casey</u>, <u>supra</u>.

### 6. **Freedom of Speech**

Plaintiff appears to allege that his First Amendment right to free speech was violated because Defendants unlawfully retaliated against him for speaking up about alleged wrongs.[11] Defendants contend that Plaintiff's claim fails because he has provided no actual instance of unlawful retaliation and has not substantiated any possible instance of unlawful retaliation.

Plaintiff fails to provide sufficient facts to substantiate any retaliation claim. Bare assertions of retaliation do not establish a claim of constitutional dimensions. See <u>Adams v. Rice</u>, 40 F.3d 72 (4th Cir. 1994), <u>cert.</u> <u>denied</u>, 514 U.S. 1022 (1995).

### 7. **Exercise of Religion**

Plaintiff appears to allege that he is denied access to religious services. Defendants contend that Plaintiff has not made the required showing that his exercise of religion has been substantially burdened by the actions or regulations of Defendants to establish a First Amendment claim. Further, Defendants argue that they have compelling interests of safety and security for any regulations and have used the least restrictive means necessary to further those compelling interests.

---

[11]Plaintiff may be attempting to allege claims concerning the SVPTP grievance system. Access to administrative remedies is not itself a constitutionally protected right. See <u>Adams v. Rice</u>, 40 F.3d 72 (4th Cir.1994); <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir.1991). Additionally, any claims that Defendants did not follow SVPTP policies or procedures do not amount to constitutional violations. See <u>United States v. Caceres</u>, 440 U.S. 741 (1978); <u>see also</u> <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); <u>Keeler v. Pea</u>, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).



Inmates clearly retain their First Amendment right to free exercise of religion in prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 3482 (1987).  In Turner v. Safley, 482 U.S. 78 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest.  Id. at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  Id.  Although the Fourth Circuit has not addressed the issue, other courts have applied Turner in analyzing constitutional claims by civilly committed SVPs.  See Thompson v. Vilsack, 328 F.Supp.2d 974 (S.D.Iowa 2004)(applying Turner to claim that co-payment for Kosher meals violated civilly committed sexual predator's First Amendment rights); Rivera v. Rogers, 2006 WL 1455789 (D.N.J. May 22, 2006)(applying Turner in analyzing claims of SVPs that opening of their packages violated their First Amendment rights); Gilmore v. Kansas, 2004 WL 2203458 (D.Kan. Sept.27, 2004) (noting Turner standard in regard to claims of denial of razors, lighters, electricity, use of a washer and dryer, and freedom to move about the facility).

Under Turner, courts must consider:

> 1) whether there is a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it,"

> 2) "whether there are alternative means of exercising the right that remain open to prison inmates,"

> 3) the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and

> 4) the "absence of ready alternatives."



<u>Turner</u>, 482 U.S. at 89-90. "Implicit in the <u>Turner</u> approach is the principle that the four-factor analysis applies only after it is determined that the policy impinges on a first amendment right." <u>Ali v. Dixon</u>, 912 F.2d 86, 89 (4th Cir.1990).

Plaintiff has not identified any SCDMH or SVPTP policy that allegedly impinges on his First Amendment Rights.  He has not set forth what religion he practice or the services he wishes to attend.

Scaturo states that access to religious services is provided to residents of the SVPTP through the terms of the interagency agreement with the SCDC.  If there is not a formal service or a chaplain provided for the particular religion he practices, Plaintiff has the alternative of worshiping in his own room.  <u>See</u> Scaturo Aff. Para. 8.  There is no affirmative duty requiring that prison administrators provide each inmate with the spiritual counselor of his choice.  <u>See</u> <u>Allen v. Toombs</u>, 827 F.2d 563, 569 (9th Cir. 1987).

**8.   <u>Immunity</u>**

Defendants contend that they are entitled to Eleventh Amendment immunity.  When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.  In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The



> Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct

26



constitutes a constitutional violation, the official is entitled to qualified
immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824

(1995).   As discussed above, Plaintiff fails to show that Defendants violated any of his clearly

established constitutional or statutory rights.  Therefore, the individual Defendants are entitled to

qualified immunity in their individual capacities.

### 9.    ADA

Plaintiff alleges that Defendants' actions (allegedly providing him with inadequate

facilities, contaminated food, unnecessary restriction on movement, inadequate exercise, forced

medication or treatment, and overcrowded living conditions) have violated his rights under Title I

and V of the ADA.  Amended Complaint at 55.  Defendants contend that Plaintiff's ADA claims fail

because Plaintiff has not identified any specific disability that is the basis for the alleged

discrimination by Defendants, and he fails to produce any evidence that he was otherwise qualified

to receive certain services or excluded from employment within the SVPTP.

Title I of the ADA provides in relevant part:

No covered entity shall discriminate against a qualified individual with a disability
because of the disability of such individual in regard to job application procedures,
the hiring, advancement, or discharge of employees, employee compensation, job
training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  Plaintiff has not alleged that he was discriminated against in employment.

Further, he has not asserted that he has a "disability" under the ADA.   See 42 U.S.C.

§ 12102(1)(defining "disability").  Title V of the ADA governs claims for retaliation. Title V states

in pertinent part:

No person shall discriminate against any individual because such individual has
opposed any act or practice made unlawful by this chapter or because such individual



made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). Here, Plaintiff has not shown that he engaged in such conduct.

10. **SCRMHP**

Plaintiff alleges that his rights under South Carolina Code Ann., §§ 44-22-10 through 44-22-220, which Plaintiff refers to as the "Patient's Bill of Rights," have been violated by Defendants. Plaintiff, however, fails to show that these rights are extended to him. The SCRMHP sets forth certain rights of mental health patients, but specifically provides that a "patient" under the SCRMHP does not include a person who is committed to SCDMH pursuant to the SVP Act. <u>See</u> S.C. Code Ann. § 44-22-10(11).

11. **CRIPA**

Plaintiff alleges that Defendants have violated his rights under the CRIPA. This Act authorizes the United States Attorney General to conduct investigations and initiate litigation relating to the conditions of confinement at State and local government institutions including institutions "for persons who are mentally ill, disabled, or retarded, or chronically ill or handicapped." 42 U.S.C. § 1997. This Act, however, does not create a private right of action. <u>See</u> <u>McRorie v. Shimoda</u>, 795 F.2d 780, 782, n. 3 (9th Cir. 1986); <u>Price v. Brittain</u>, 874 F.2d 252, 252-264 (5th Cir. 1989).

<u>CONCLUSION</u>

It is, therefore, **ORDERED** that Plaintiff's motion to supplement (Doc. 93) is **denied**. Based on review of the record, it is recommended that the motion to dismiss of Defendants SVPTP and SCDMH (Doc. 51) be **granted** as to Plaintiff's claim for monetary damages, the motion to dismiss of the John Doe Defendants (Doc. 52) be **granted**, and Defendants' motion for summary judgment



(Doc. 82) be **granted**. Additionally, it is recommended that Plaintiff's motion for declaratory judgment (Doc. 78) be **denied**, Plaintiff's motion to dismiss (Doc. 85) be **denied**; and Plaintiff's motion to stay (Doc. 89) be **denied**.

Joseph R. McCrorey
United States Magistrate Judge

February 19, 2010
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

29

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

